UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BERNARD HUGHLON,

      Petitioner,

v.                              Case No. 3:18-cv-619-MMH-JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## **ORDER**

### **I. Status**

Petitioner Bernard Hughlon,[1] an inmate of the Florida penal system,
initiated this action on May 4, 2018,[2] by filing a Petition for Writ of Habeas
Corpus Under 28 U.S.C. § 2254 (Petition; Doc. 1). In the Petition, Hughlon
challenges a state court (Duval County) conviction for escape. Hughlon raises

_____

[1] The record reflects that Hughlon has several aliases, including Bernard
Richardson.
[2] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

six grounds for relief. See Petition at 5-17.[3] Respondents initially moved to dismiss the Petition as untimely. See Doc. 13. The Court denied the motion to dismiss and directed Respondents to file a response to the merits. See Doc. 30. Thereafter, Respondents filed a response in opposition to the Petition. See Response to Petition for Writ of Habeas Corpus (Response; Doc. 31).[4] Hughlon filed a reply. See Reply to State Response and is in Good Faith also in Compliance with 2254 (Reply; Doc. 41). Also, before the Court is Hughlon's Motion to Compel (Doc. 42). The Petition and Motion to Compel are ripe for review.

## II. Relevant Procedural History

On May 18, 2009, the State of Florida (State) charged Hughlon by way of amended information with two counts of sexual battery (counts one and four), three counts of lewd or lascivious molestation (counts two, three, and five), lewd or lascivious exhibition (count six), child abuse (count seven), and escape (count eight). Resp. Ex. 3 at 36-37, 49-50. On September 21, 2010, Hughlon proceeded to trial on count eight only and a jury found him guilty of escape. Resp. Ex. 4 at 26. On December 3, 2010, the circuit court adjudicated

---

[3] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

[4] Respondents represent that they are relying on the exhibits attached to their motion to dismiss, which the Court will cite in this Order as "Resp. Ex."

Hughlon as a habitual felony offender (HFO) and sentenced him as to count eight to a term of incarceration of thirty years in prison. Id. at 92-95.

Hughlon appealed his conviction and sentence as to count eight. Id. at 100. In his initial brief, Hughlon argued that the trial court: (1) refused to conduct a timely Nelson[5] hearing; (2) refused to instruct the jury on a lesser included offense; and (3) held Hughlon in contempt without following the proper procedure. Resp. Ex. 14. The State filed an answer brief. Resp. Ex. 15. On June 26, 2012, Florida's First District Court of Appeal (First DCA) affirmed the conviction and sentence without a written opinion, Resp. Ex. 16, and issued the mandate on July 12, 2012, Resp. Ex. 17.

Hughlon filed a pro se motion to correct an illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a) (3.800(a) Motion). Resp. Ex. 20 at 1-7. In the Rule 3.800(a) Motion, Hughlon argued his sentence exceeded the statutory maximum, the trial court erred in setting aside his binding plea agreement, and the trial court erroneously adjudicated him as an HFO. Id. The postconviction court denied relief, id. at 9-15, and the First DCA affirmed, Resp. Ex. 23.

Hughlon next collaterally attacked his conviction and sentence via a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure

---

[5] Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973).

3

3.850 (Rule 3.850 Motion), in which he raised thirty grounds for relief. Resp. Ex. 32 at 1-27. Following an order striking several grounds with leave to amend, Hughlon filed a supplement to his motion. Id. at 33-43. The postconviction court denied relief, id. at 58-87, and the First DCA affirmed the denial of relief, Resp. Ex. 37.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See Doc. 30.

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately

4

assess [Hughlon's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" <u>Id.</u> (quoting <u>Hill v. Humphrey</u>, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. <u>See</u> <u>Marshall v. Sec'y, Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is

unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a

"contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[6] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

---

[6] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

<u>Tharpe v. Warden</u>, 834 F.3d 1323, 1337 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. <u>See</u> <u>Cullen v. Pinholster</u>, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." <u>Burt v. Titlow</u>, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" <u>Tharpe</u>, 834 F.3d at 1338 (quoting <u>Richter</u>, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. <u>Richter</u>, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per

8

curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v.</u>

<u>Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>, at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u>, at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u>, at 687, 104 S. Ct. 2052.

<u>Richter</u>, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of

any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test

before the other." <u>Ward</u>, 592 F.3d at 1163. Since both prongs of the two-part

<u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a

court need not address the performance prong if the petitioner cannot meet the

prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243,

1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's

decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

### VI. Findings of Fact and Conclusions of Law

### A. Ground One

Hughlon argues that his counsel was ineffective for failing to object and move to strike an unnamed juror. Petition at 5-6. According to Hughlon, the juror saw Hughlon in his prison garb with shackles while Hughlon was being transported to the courtroom. <u>Id.</u> Hughlon avers that this tainted the juror and potentially the other jurors. <u>Id.</u> Additionally, Hughlon asserts that he saw the same juror have a discussion with the prosecutor assigned to his case during which he observed "positive body language/laughter." <u>Id.</u> at 5. Although Hughlon admits he does not know the content of the conversation, he contends that the conversation shows that "the jury members bonded with, and favored the State Attorney." <u>Id.</u> at 6.

Hughlon raised a similar claim in state court as ground two of his Rule 3.850 Motion. Resp. Ex. 32 at 6-7. In denying relief on this claim, the postconviction court explained:

> At the post-trial hearing held October 6, 2010, Defendant told the trial court why he wanted to file a <u>pro se</u> arrest of judgment: "The reason why I filed that motion right there was because, when I was being escorted by the officers to here, to get ready for trial,

the juror was sitting out there in the hallway . . . And I don't feel like that was a fair trial." He claimed that he had related this allegation to his attorney. The Court questioned defense counsel as follows:

> THE COURT:  Now, . . . did [Defendant] say anything to you about seeing someone talking to one of the jurors . . . ?
>
> [DEFENSE COUNSEL]:  He said that one of the jurors saw him, when he was being escorted . . . in his handcuffs. I didn't see how that would prejudice the jury. I've had trial with handcuffs and shackles, and they have been found not guilty. So, I don't see anything prejudicial about that.

The Court found that counsel was not ineffective in failing to seek a remedy due to a juror allegedly seeing Defendant in restraints.

The above exchange shows that the Court has already addressed the claim in Ground Two during the October 6, 2010 hearing and found it to be without merit. Defendant raised this issue on direct appeal, and the First District implicitly found it to be without merit. Issues that could have been, should have been, or were raised on direct appeal may not be raised in a motion for postconviction relief. Zeigler v. State, 452 So. 2d 537 (Fla. 1984). Proceedings under Rule 3.850 are not to be used a second appeal. Medina v. State, 573 So. 2d 293 (Fla. 1990). The Court therefore finds that the claim in Ground Two is procedurally barred.

Id. at 62-63 (record citations omitted). Without writing a written opinion, the

First DCA affirmed the denial of relief. Resp. Ex. 37.

12

To the extent that the First DCA decided the claim on the merits,[7] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Hughlon is not entitled to relief on the basis of this claim.

Given the facts of this case, there is no reasonable probability a single juror's brief viewing of Hughlon handcuffed outside of the courtroom or the prosecutor's alleged conversation with a juror changed the outcome of the trial. The record reflects that the State presented two witnesses, Detectives Futch and Henson. Futch testified that he arrested Hughlon on unrelated charges and was walking him from the police station to the jail to be processed. Resp. Ex. 6 at 29-39. Inside the sally port of the jail, Futch was filling out paperwork when, out of the corner of his eye, he observed Hughlon run out of the sally port in the direction of the employee parking lot. Id. at 38-40. Futch yelled out

---

[7] Throughout this Order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

to the other officers in the sally port to stop Hughlon, and Detective Henson and Futch gave chase. Id. at 40-41, 53-57. After a chase over a 100-yard span, Henson deployed his taser and apprehended Hughlon, who was then taken back into custody without further issue. Id. at 40-41, 57-61. In light of the unrebutted testimony, identity was not an issue at trial. As such, the State presented substantial evidence of Hughlon's guilty. Accordingly, Hughlon has failed to demonstrate prejudice. See Clark v. Comm'r, Alabama Dep't of Corr., 988 F.3d 1326, 1333 (11th Cir. 2021) (holding that where strong evidence of guilt was present, petitioner could not demonstrate prejudice of two jurors observing him in shackles during trial); see also Barber v. Dunn, No. 5:16-CV-00473-RDP, 2019 WL 1098486, at *53 (N.D. Ala. Mar. 8, 2019) (holding a juror's brief exposure to a shackled defendant outside of the courtroom did not establish a violation under the Fifth or Fourteenth Amendment). Hughlon is not entitled to relief on the claim in Ground One.

## B. Grounds Two and Three

As Ground Two, Hughlon contends that the trial court erred "by illegally voiding a legal and binding contract/Defendant's eighteen (18) month plea agreement[.]" Petition at 7. Hughlon maintains that he entered into a negotiated plea agreement that the trial court accepted that disposed of his escape charge along with the remaining counts. Id. at 7-9. However, he asserts that he was recalled into court shortly after entering the negotiated plea,

14

where a different defense attorney and prosecutor were present. Id. At this hearing, the prosecutor presented a fifteen-year plea deal for the escape charge, which Hughlon refused to sign because he believed he had already entered into a binding plea agreement. Id. As a result of Hughlon's decision to decline the fifteen-year plea, he proceeded to trial, was found guilty, and received a thirty-year sentence as an HFO. Id. Hughlon maintains the thirty-year sentence was unlawful and constituted double jeopardy. Id. In Ground Three, Hughlon argues his counsel was ineffective for failing to object to the trial court's failure to uphold the alleged original plea agreement and argue that the sentence imposed amounted to a double jeopardy violation. Id. at 10-11.

Hughlon raised similar claims in his Rule 3.850 Motion. Resp. Ex. 32 at 7-9. Regarding Hughlon's double jeopardy claim, the postconviction court wrote the following:

> The Court has carefully reviewed the record in this case and has determined that there was only one pretrial hearing in August of 2008, which was held on August 7. The transcript of that hearing shows that the only mention of a plea offer that occurred during the hearing was a comment made by defense counsel at the beginning of the hearing: "Judge, [Defendant] tendered a defense offer to the State, which was rejected today." The Court has also reviewed all of the transcripts of the other pretrial hearings that are part of the record in this case and has found no indication that any plea agreement was ever reached, or even seriously discussed. Because the record refutes the

15

> factual allegations contained in Ground Four of
> Defendant's motion, the Court finds he is not entitled
> to relief.

Id. at 64 (record citations omitted). As to Hughlon's ineffective assistance of

counsel claim, the postconviction court ruled:

> As explained in Ground Four supra, the transcript of
> the August 7, 2008 pretrial hearing shows that the
> only mention of a plea offer that occurred during the
> hearing was a comment made by defense counsel at
> the beginning of the hearing:  "Judge, [Defendant]
> tendered a defense offer to the State, which was
> rejected today." Because the record refutes the factual
> allegations contained in Ground Six of Defendant's
> motion that a plea agreement had been reached, the
> Court finds that defense counsel was not ineffective in
> failing to make any objection related thereto.

Id. at 65 (record citations omitted). The First DCA affirmed the denial of relief

without issuing a written opinion. Resp. Ex. 37.

To the extent that the First DCA decided the claims on the merits, the

Court will address the claims in accordance with the deferential standard for

federal court review of state court adjudications. After a review of the record

and the applicable law, the Court concludes that the state court's adjudication

of these claims was not contrary to clearly established federal law, did not

involve an unreasonable application of clearly established federal law, and was

not based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceedings. Thus, Hughlon is not entitled to relief

on the basis of these claims.

Under § 2254(e)(1), a state court's factual determination is presumed correct unless a petitioner provides clear and convincing evidence rebutting the factual determination. Nothing in the record provided to the Court supports Hughlon's assertion that he resolved his escape charge via a negotiated guilty plea. Hughlon filed with this Court a motion for clarification requesting the Court to direct Respondents to produce a transcript from a pre-trial proceeding held on August 7, 2008, during which he claims to have entered into the plea deal in question. Doc. 16. In response, Respondents represented that they could not find any record of an eighteen-month plea deal or transcripts that reflect the entry of such. Doc. 19. Being as there was no documents with which to supplement the record, on April 16, 2019, the Court denied Hughlon's motion, but afforded Hughlon additional time to procure and produce these records on his own. Doc. 21. On August 13, 2021, Hughlon provided supplemental records, which included:  (1) a letter Hughlon wrote to the court reporter requesting copies of the transcripts; (2) a response from the court reporter indicating that those records were no longer kept because the proceeding was over ten years old; (3) two docket printouts with reference to a "disposition" on August 7, 2008; and (4) an unsigned and unverified "affidavit" that Hughlon purports to be from his brother, who was in the courtroom on August 7, 2008, and allegedly corroborates Hughlon's version of events. Doc. 34.

17

The first docket sheet that Hughlon provides, Doc. 34 at 3, does not include the case number or any other identifying information that would connect that docket to Hughlon's escape charge, Duval County Case Number 2008-CF-6058. Without more, the Court cannot determine the relevancy of this record. Moreover, although the document states "DISPOSITION" on August 7, 2008, every date after it reflects pretrial activity, which shows the case was not disposed of that day.

The second docket sheet, which does include reference to the correct criminal case number, reflects the following entry on July 24, 2008: "DISPOSITION 08/07/2008 09:00 - 3 330 E BAY ST (CIRCUIT)."[8] Id. at 4. However, the docket entries on August 7, 2008, do not reflect any notation regarding a disposition and only reference the date of the next pretrial conference. Id. Notably, Hughlon had another criminal case, Duval County Case Number 2008-CF-1671,[9] in which a proceeding was held on August 7, 2008, at 9:57 a.m. During that proceeding, defense counsel represented that the prosecution had rejected a defense offer and the prosecutor stated that they wanted to try Hughlon's escape charge prior to going to trial on the charges in

---

[8] Respondents also provided this same printout of the docket in their exhibits. Resp. Ex. 3 at 8.

[9] The State charged Hughlon with one count of failure to comply with sexual offender requirements. Resp. Ex. 44 at 8.

Case Number 2008-CF-1671. Doc. 32 at 292-93. Again, this evidence shows there was no resolution of the escape charge at that time.

As to the "affidavit," this unsigned and unnotarized document is insufficient and not credible. Hughlon has not provided clear and convincing evidence that the postconviction court's factual determination that he did not enter a plea pursuant to an eighteen-month plea agreement is incorrect. Therefore, the Court presumes the postconviction court's factual determination that Hughlon did not plead guilty is correct. As Hughlon did not enter a negotiated guilty plea, his sentence does not violate Double Jeopardy. Likewise, counsel cannot be ineffective for failing to raise a meritless challenge. See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005) (holding counsel cannot be ineffective for failing to raise a meritless argument); Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting that "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). Relief on the claims in Grounds Two and Three are due to be denied.

## C. Ground Four

Next, Hughlon asserts that the trial court erred when it failed to give a jury instruction on the lesser-included offense of resisting arrest without violence. Petition at 12-13. According to Hughlon, his counsel requested this instruction, but the trial court denied the request. Id. Hughlon maintains that

19

the evidence supported the reading of this instruction and, therefore, he was entitled to have it read to the jury. Id.

During the charge conference, defense counsel requested a jury instruction for resisting arrest without violence. Resp. Ex. 6 at 74-79. The trial court denied the request, explaining:

> Okay. In this case I don't find that the elements of the resisting are set out in the charging document. So, I don't believe it would be appropriate to instruct them, or give them resisting without violence as a lesser included offense. So, I'm going to deny that request.

Id. at 78-79. Hughlon raised the trial court's failure to give this instruction on direct appeal. Resp. Ex. 14. The First DCA affirmed the conviction and sentence. Resp. Ex. 16.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Hughlon is not entitled to relief on the basis of this claim.

"[I]n non-capital cases . . . the 'Due Process Clause does not require a state court to instruct the jury on lesser included offenses.'" Harris v. Crosby, 151 F. App'x 736, 737 (11th Cir. 2005) (citing Perry v. Smith, 810 F.2d 1078, 1080 (11th Cir. 1987)). Accordingly, Hughlon is not entitled to federal habeas relief on his claim that the trial court erred in failing to give a jury instruction on resisting arrest without violence. See id. Moreover, under Florida law, resisting an officer without violence is not a necessarily lesser included offense of escape. See Applewhite v. State, 874 So. 2d 1276, 1278-79 (Fla. 5th DCA 2004). As such, to read an instruction on resisting an officer without violence, the information must allege all the statutory elements of the lesser offense and the evidence at trial must support a guilty verdict on the lesser offense. Id. at 1279. Here, as in Applewhite, the charging document did not allege every element of resisting an officer without violence. Resp. Ex. 3 at 26. Accordingly, the trial court did not err in refusing to read the instruction. Based on the above analysis, the claim for relief in Ground Four is due to be denied.

## D. Ground Five

Hughlon maintains that his trial counsel was deficient for failing to object to improper comments during the State's closing arguments. Petition at 14-15. According to Hughlon, on three occasions the prosecutor made comments that the evidence did not support. Id. First, he contends that the prosecutor accused defense counsel of arguing that there was no evidence to

21

support the case against Hughlon. Id. at 14. Second, the prosecutor incorrectly "stated that the sally port area of the jailhouse was secured which conflicted with Detective Futch's testimony stating that the bay doors were opened all the way." Id. Third, the prosecutor stated there were no surveillance cameras, despite testimony from law enforcement that security cameras were present at the sally port and in the jailhouse. Id. Hughlon maintains these comments misled the jury. Id.

In state court, Hughlon raised this claim as grounds fifteen, twenty, and twenty-two of his Rule 3.850 Motion Resp. Ex. 32 at 15-16, 18-20. The postconviction court denied relief, writing:

> Detective Futch testified that during his deposition in this case, he learned that there were cameras in the sally port area. Detective Henson also testified that there were cameras in the sally port area.
>
> The prosecutor made the following statement during his closing argument:
>
>> Defense counsel mentioned that you have some video. Detective Futch testified that he didn't know that there was a video inside the pretrial detention facility. But most of this defendant's action took place outside. He ran outside. So, there would have been no video in the area to collect what he was doing outside.
>
> . . . .
>
> The Court finds that the prosecutor's comments in closing accurately reflected the testimony presented

22

at trial, and therefore there was no good faith basis upon which defense counsel could have objected. Therefore, even if counsel had objected to the prosecutor's closing argument, the objection would have been overruled. Defense counsel cannot be deemed ineffective for failing to make an objection that has no merit. See Card v. Dugger, 911 F.2d 1494, 1520 (11th Cir. 1990). As such, the Court finds that Defendant is unable to meet either the deficient performance or the prejudice prong of the Strickland test, [sic] and this claim is without merit.

Id. at 71 (record citations omitted).

Defense counsel made the following comments during her closing argument:

> [DEFENSE COUNSEL]:   [T]here's no evidence presented to you, other than Detective Futch and Detective Henson, that says our client left the sally port that day, went four lengths of this courtroom, and fell down in some bushes.
>
> * * *
>
> [DEFENSE COUNSEL]:   [T]here are no bushes there. So, what bushes did he fall into. If they took it so seriously, somebody who escaped, they could have photograph [sic] of these bushes, but today they are not here. The reason why, [Defendant] never fell into any bushes, because he never escaped.
>
> * * *
>
> [DEFENSE COUNSEL]:   Another thing we can talk about is the lack of evidence. And since we're talking about this video, there's no video. There's no video of everything that took place that day in the

23

sally port area. . . . If somebody committed an escape at the Jacksonville Sheriff's, right there in their facilities, they should have the video. There's nothing that shows that our client ran, because he did not run.

* * *

[DEFENSE COUNSEL]:  [T]hey know he did not escape. And there's been <u>no evidence</u> that's been presented to you today, that even an EMT was called out, nothing. Nothing that shows he was tased, nobody testified that an EMT was called out today, because [Defendant] did not escape.

* * *

[DEFENSE COUNSEL]:  [I]t didn't happen. There's nothing that they can show you that says [Defendant] escaped, other than what those two people said to you today. . . . We don't have a video . . .

In response, the prosecutor made the following argument during his rebuttal closing:

[PROSECUTOR]:  Let's talk about what the defense is arguing. First, <u>[defense counsel] stated there was no evidence</u>. Now, the Judge will explain to you, . . . testimony is evidence. Testimony that comes from the stand is evidence for you to consider. And what did you hear. You heard from Detective Henson and Detective Futch about this defendant's actions. Their testimony is evidence, and the Judge will tell you to consider it as such.

* * *

[PROSECUTOR]:  And the Judge will tell you, the evidence that you can consider is testimony from . . . the witness chair.

\* \* \*

[PROSECUTOR]:  <u>Defense counsel kept saying there was no evidence, no evidence, no evidence</u>. Testimony is evidence.

. . . .

The Court finds that the prosecutor's comments were a fair rebuttal to defense counsel's own closing argument and were therefore proper. As such, any objection to the prosecutor's argument would have been overruled. Because Defendant is unable to meet either the deficient performance or the prejudice prong of the <u>Strickland</u> test, he is not entitled to relief as to Ground 20.

<u>Id.</u> at 73-74 (record citations omitted).

Detective Futch testified that after Defendant was handcuffed, he was escorted to the pretrial detention facility by himself and another detective. Once the lock was activated at the door of the sally port, the other detective left. Detective Futch testified that there were two large aluminum rollup doors on either end of the sally port to allow cars to drive through, and one of them was open at the time. Defendant remained handcuffed behind his back as he waited in line to be processed into the jail.

During his initial closing the prosecutor stated, "And you learned today that a sally port is a secure area right before the individual are taken into the pretrial detention facility." "The defendant . . . was in the sally port of this detention facility, clearly secure. Secure by two metal doors on each side, that are raised only when cars are going in or out of the facility." Defense counsel did not object to these statements.

. . . .

> The Court finds that the prosecutor's statements did not misstate the evidence and were fair comments on the testimony presented at trial. As such, if counsel had objected to the comments, the objection would have been overruled. Because Defendant is unable to meet either the deficient performance or the prejudice prong of the <u>Strickland</u> test, the Court finds he is not entitled to relief as to this claim.

<u>Id.</u> at 75-76 (record citations omitted). Without issuing a written opinion, the First DCA affirmed the denial of relief. Resp. Ex. 37.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Hughlon is not entitled to relief on the basis of this claim.

For purposes of federal habeas review, "a prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" <u>Parker v. Matthews</u>, 567 U.S. 37, 45 (2012) (quoting <u>Darden v.</u>

Wainwright, 477 U.S. 168, 181 (1986)). "[O]pening statements and closing arguments are not in themselves evidence, their purpose 'is to assist the jury in analyzing the evidence.'" Burchfield v. CSX Transp., Inc., 636 F.3d 1330, 1335 (11th Cir. 2011) (quoting United States v. Hasner, 340 F.3d 1261, 1275 (11th Cir. 2003)). Indeed, during closing arguments "a prosecutor may 'assist the jury in analyzing, evaluating, and applying the evidence' and, therefore, may 'urge[ ] the jury to draw inferences and conclusions from the evidence produced at trial." United States v. Adams, 339 F. App'x 883, 886 (11th Cir. 2008) (quoting United States v. Johns, 734 F.2d 657, 663 (11th Cir. 1984)).

Regarding the prosecutor's comments asserting defense counsel argued there was no evidence to support a conviction, in review of counsel's closing arguments the Court determines the prosecutor's statements were a fair rebuttal to defense counsel's continued arguments regarding the lack of evidence. Moreover, closing arguments are not evidence; therefore, even if a mischaracterization occurred, Hughlon cannot demonstrate prejudice considering the overwhelming evidence of his guilt.

As to the security of the sally port, Detective Futch testified it was a large garage, with aluminum rollup doors. Resp. Ex. 6 at 35-38. Inside the port there were two lanes, additional parking, and a "control pod" where correctional officers processed the new inmates who waited in a line near the control pod. Id. Futch escorted Hughlon inside the sally port and Hughlon was waiting in

line to be processed. Id. at 38-39. According to Futch, one of the aluminum doors was open. Id. at 39. Hughlon was able to get one hand free from his handcuffs and ran out of the sally port through that open aluminum door. Id. Detective Henson testified similarly, also noting that one of the aluminum garage doors was open. Id. at 53-55. Based on this evidence, the Court finds the prosecutor comments were not improper when she stated that Hughlon was in the sally port "clearly secured . . . by two metal doors on each side, that are raised only when cars are going in or out of the facility." Id. When read in context, the prosecutor merely detailed the setting of the escape, including the secured features of the sally port. In other parts of the State's closing arguments, the prosecutor acknowledged that Hughlon ran through one of the open doors. Id. at 83, 85. Therefore, the prosecutor did not misstate the evidence and there would have been no basis on which to object. Moreover, whether the door was open or closed was irrelevant considering the fact the sally port was part of the jail, a place of confinement under Florida's escape law. See § 944.40, Fla. Stat.

Concerning the comments related to the security cameras, upon review, Hughlon has mischaracterized the prosecutor's comments. During her rebuttal closing, the prosecutor made the following statements:

> Let's also talk about this video. Defense counsel mentioned that you should have some video. Detective Futch testified that he didn't know that there was a

28

> video inside the pretrial detention facility. But most of
> this defendant's actions took place outside. He ran
> outside. So, there would have been no video in the area
> to collect what he was doing outside.

Resp. Ex. 6 at 98. Detective Futch testified that although unknown to him at

the time, there were security cameras in the sally port. Id. at 48-49. Likewise,

Detective Henson testified to the existence of cameras in the sally port. Id. at

63-64. Nothing the prosecutor said deviated from this testimony. The

prosecutor acknowledged video cameras inside the sally port, but also noted

that Hughlon's escape and subsequent apprehension occurred outside of the

sally port where there was no evidence security cameras existed. Thus, the

prosecutor correctly commented on the evidence presented. Defense counsel,

therefore, would not have had a basis on which to object. In light of the above

analysis, Hughlon has failed to demonstrate the prosecutor made objectionable

comments or that those comments prejudiced him. Accordingly, the claim for

relief in Ground Five is due to be denied.

### E. Ground Six

Last, Hughlon argues that his trial counsel was ineffective for admitting

during closing argument that Hughlon was tased outside the jailhouse and

escorted back into the jailhouse. Petition at 16-17. According to Hughlon, these

comments contradicted his defense at trial that he was innocent. Id.

Hughlon raised this argument in his Rule 3.850 Motion. Resp. Ex. 32 at

12-13. In the postconviction court's order denying relief, it wrote:

> Detective Henson testified that Defendant was tased near some bushes, where he was recaptured after he fled the sally port. The detective also testified as follows:
>
>> [PROSECUTOR]:  How far would you say the defendant ran?
>>
>> [DET. HENSON]:  Probably, maybe 100 yards.
>>
>> [PROSECUTOR]:  And Detective, if you could estimate how long do you think the length of this courtroom is?
>>
>> [DET. HENSON]:  About 25 yards.
>>
>> [PROSECUTOR]:  Twenty-five yards. Would you say that he ran about four lengths of this courtroom, away from the sally port?
>>
>> [DET. HENSON]:  Yes, ma'am.
>
> Defense counsel made the following comments during her closing argument:
>
>> [DEFENSE COUNSEL]:  [T]here's no evidence presented to you, other than Detective Futch and Detective Henson, that says our client left the sally port that day, went four lengths of this courtroom, and fell down in some bushes.
>
> * * *

30

> [DEFENSE COUNSEL]: Another thing is that they didn't call an evidence technician out, or the EMT out to where he was tased. Here's a man who was tased, and tasers can be dangerous, tasers can lead to death, tasers can cause harm . . . But what do they do, they walk our client four lengths of this courtroom, all the way back to the sally port area, after he was tased, and then they call the EMT.
>
> . . . .
>
> Defendant is taking defense counsel's comments out of context, and he asks this Court to consider them in isolation, which this Court declines to do. The Court finds that counsel in no way conceded Defendant's guilt. Indeed, as more fully discussed in the analysis of Ground 20 infra, the entire theory of defense, which wound like a thread through defense counsel's entire closing argument, was that the escape never happened at all. The Court further finds that counsel's argument was an accurate reflection of testimony presented at trial and therefore was proper. Because Defendant is unable to meet either the prejudice or the deficient performance prong of the Strickland test, he is not entitled to relief as to Ground 11.

Id. at 67-69 (record citations omitted). The First DCA affirmed the denial of relief. Resp. Ex. 37.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve

31

an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Hughlon is not entitled to relief on the basis of this claim.

Throughout the defense's closing arguments, counsel argued that the State failed to prove it was Hughlon who tried to escape. Resp. Ex. 6 at 88-94. The comments the postconviction court referenced in its order are not concessions of guilt but a hypothetical counsel proposed to the jury attempting to highlight the lack of evidence to support the detective's testimony. Counsel attempted to contrast the prosecutor's contentions regarding the seriousness of an escape charge with the detective's lack of response at the scene. As such, there would have been no grounds on which to object and counsel is, therefore, not deficient. Moreover, based on the unrebutted testimony of both detectives, there is no reasonable probability the outcome of the trial would have been different had defense counsel not made these comments. Hughlon cannot demonstrate prejudice. For these reasons, Hughlon is not entitled to relief on the claim in Ground Six.

## VII. Motion to Compel

Hughlon requests the Court to order the state clerk of court to provide a transcript or minutes of proceedings held on August 7, 2008, from 10:00 a.m. to 10:30 a.m. Doc. 42 at 1. He contends that this transcript would prove he

entered into an eighteen-month plea agreement. Id. This is Hughlon's third request for the same. The Court afforded Hughlon over two years to obtain this documentation on his own. Hughlon has not provided any additional argument or evidence for the Court to reconsider its previous ruling on the matter. Therefore, the Motion to Compel is due to be denied.

## VIII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Hughlon seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Hughlon "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

33

See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.     The Motion to Compel (Doc. 42) is **DENIED**.

2.     The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

3.     The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

4.     If Hughlon appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

5.     The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 22nd day of September, 2021.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-8

C:    Bernard Hughlon #J09810
       Counsel of record